IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROL MASSENGILL,

Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner, Social Security Administration,

Defendant.

No. 6:13-cv-00791-HZ

OPINION & ORDER

Kathryn Tassinari
Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

Attorneys for Plaintiff

Adrian L. Brown
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Kathryn Ann Miller
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Carol Massengill ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

BACKGROUND

Born in 1953, plaintiff was 55 years old on the alleged onset date. Tr. 44. She speaks English and has past work experience as a caregiver, a custodian, a clerical worker, a housekeeper, and a waitress. Tr. 20. Plaintiff filed an application for DIB on February 20, 2009, alleging a disability onset date of April 30, 2008. Tr. 148-50. She later amended her alleged onset date to April 16, 2008. Tr. 168.

The Commissioner denied plaintiff's application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 98-100, 103-06, 110-11. After an administrative hearing, held on August 9, 2011, ALJ Michael Gilbert issued a decision on November 10, 2011, finding plaintiff was not disabled. Tr. 8-21. The Appeals Council denied plaintiff's subsequent request for review on April 8, 2013, making the ALJ's decision the final Agency decision. Tr. 1-4; 20 C.F.R. § 422.210 (2014). This appeal followed.

/ / /

SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at

141-42; 20 C.F.R. § 404.1520(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. § 404.1566.

THE ALJ'S DECISION

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity after her alleged onset date through December 31, 2009, her date last insured. Tr. 13. At step two, the ALJ found plaintiff had the severe impairments of lumbar degenerative disc disease and optic atrophy. Id. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment. Tr. 15.

The ALJ next assessed plaintiff's RFC and determined that plaintiff retained the ability to perform light work with the following limitations: she can lift up to twenty pounds occasionally and ten pound frequently; she can stand and walk for a total of six hours and sit for up to eight hours in an eight-hour workday; she can climb ramps or stairs frequently and frequently balance, kneel, or crawl; she can occasionally stoop or crouch; she is limited to occupations that do not require fine visual acuity; she may have no greater than occasional exposure to moving machinery, unprotected heights or hazardous machinery; and she cannot drive at nighttime. Id. At step four, the ALJ found that plaintiff was capable of performing her past work as a clerical worker, housekeeper, cashier, and waitress. Tr. 20. The ALJ accordingly found that plaintiff was not disabled prior to December 31, 2009. Tr. 21.

STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th

Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) rejecting her credibility and (2) rejecting the opinions of Charles Plotz, M.D., and Brian Jones, M.D. Plaintiff alleges that due to these errors, the ALJ erroneously concluded that plaintiff was capable of performing her past relevant work. For the reasons discussed below, the ALJ's opinion is affirmed.

### I. Credibility

Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons for rejecting her testimony about the nature and extent of her impairments. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the

ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Id. at 1284; see also Lingenfelter, 504 F.3d at 1036. If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see also Morgan, 169 F.3d at 599.

Plaintiff testified that her biggest barrier to sustaining employment was pain in her lower back associated with sitting and standing. Tr. 52. She stated that she is constant pain and on a typical day she rates her pain as a "[s]even to eight" on a scale of 1 to 10. Tr. 53. Plaintiff testified that her pain worsens if she moves around or bends over, and that two to three times per

month the pain radiates into her legs and left buttock for "an hour or two at a time." Tr. 59-60. She testified that she could not stand in place for more than five minutes, and that it was very painful to walk for fifteen to twenty minutes. Tr. 60-61. She was extremely uncomfortable sitting for 40 minutes during the hearing, and stated that she needs to lie down for about 30 minutes two to three times per day to relieve her pain. Tr. 61-62. Next to her back pain, plaintiff testified that her second largest barrier to employment was her eyesight. Tr. 54. She stated that she has difficulty reading anything for any length of time. Id. Plaintiff was advised by her doctors not to drive at night due to problems with peripheral vision. Tr. 45-46.

The ALJ found that plaintiff was not credible in her testimony regarding the severity of her symptoms and limitations. Tr. 18, 20. First, he noted that multiple medical sources opined that plaintiff did not give full effort during examinations. Tr. 18, 297-309, 486-97. Failure to give "maximum or consistent effort" during a physical evaluation is compelling evidence of a lack of credibility. Thomas, 278 F.3d at 959. For example, orthopedic surgeon Stephen Teal, M.D., performed a physical examination of plaintiff in September, 2008. Tr. 297. Dr. Teal noted that plaintiff gave "questionable effort" during the physical examination and questioned the validity of her examination results. Tr. 303-04. Dr. Teal's opinion that plaintiff failed to give maximum effort during the physical evaluation in 2008 is a compelling reason for the ALJ to reject plaintiff's credibility. Thomas, 278 F.3d at 959.

Examining physician DeWayde Perry, M.D., also performed a physical examination of plaintiff in May, 2011. Tr. 486. Dr. Perry noted that plaintiff refused to perform a variety of physical tests that he attempted to administer, and wrote that she provided "extremely poor effort." Tr. 488-90. Plaintiff's failure to provide maximum or consistent effort during the physical evaluation with Dr. Perry also supports the ALJ's credibility finding. Thomas, 278 F.3d

at 959. Plaintiff's lack of effort at medical exams also reflects generally on her credibility regarding her symptomology, and the ALJ properly used ordinary techniques of credibility evaluation to conclude that she was not credible. See Tommasetti, 533 F.3d at 1039; see also Burch, 400 F.3d at 680.

Second, the ALJ noted that plaintiff's testimony was contradicted by medical evidence in the record. Conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. Morgan, 169 F.3d at 600. Here, the ALJ considered the medical opinion of Scott Kitchel, M.D., who examined plaintiff in September, 2008. Dr. Kitchel noted his agreement with Dr. Teal's findings, and opined that plaintiff was capable of light-duty work. Tr. 312, 319. Dr. Kitchel's assessment provides further justification for the ALJ's credibility finding. Morgan, 169 F.3d at 600.

Consulting physician Charles Plotz, M.D., appeared at the hearing after reviewing plaintiff's medical records and opined that plaintiff "dramatizes her pain." Tr. 37-38. Dr. Plotz also testified to the ALJ that plaintiff is capable of sedentary work. Id. Dr. Plotz's opinion regarding plaintiff's functional abilities contradicts plaintiff's testimony of severe physical functional limitations, and provides further weight to the ALJ's credibility finding. Morgan, 169 F.3d at 600. On this record, the ALJ's conclusion that plaintiff's testimony was not credible was supported by legally sufficient reasons. While plaintiff disagrees with the ALJ's interpretation of the evidence and offers an alternative, see Pl.'s R. Br. 1-2, the Court must reject plaintiff's interpretation of the evidence because the ALJ's decision was rational. Sample, 694 F.2d at 642. In sum, the ALJ provided sufficient clear and convincing reasons sufficient to reject plaintiff's subjective symptom testimony, and his credibility finding is affirmed.

/ / /

II. Medical Evidence

Plaintiff argues, second, that the ALJ improperly evaluated the medical record because he rejected the opinions Drs. Jones and Plotz. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. Lester, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. Tommasetti, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without

providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. Smolen, 80 F.3d at 1286.

A. Medical Opinion of Brian Jones, M.D.

Dr. Jones was plaintiff's treating physician for 16 years, and performed multiple physical examinations. See Tr. 370. Based on his observations over the course of the treating relationship, Dr. Jones opined that plaintiff cannot perform any substantial gainful activity, and that she cannot sit for even 10 minutes. See Tr. 374 (January, 2010 treatment note stating "I do not think [plaintiff] is able to work at this point"), 386 (February, 2009 treatment note stating "[t]here is no way [plaintiff] could be working at this time"), 395-96 (November, 2008 note stating "[t]here is really no way [plaintiff] can go back to work at this point"), 399 (note stating that custodial work is not appropriate for plaintiff), 402-03 (July, 2008 note stating "[plaintiff] is really in no position to go back to full-time work without restriction"), 468 (April, 2011 statement that plaintiff is incapable of any level of work).

The ALJ rejected Dr. Jones' opinion regarding plaintiff's extreme functional limitations. Tr. 19. First, Dr. Jones' opinion that plaintiff could not sit for 10 minutes was contradicted by the opinion of Dr. Plotz, who testified that plaintiff had no limits on sitting, although she would need to "squirm around a little bit" while doing so. Tr. 39-40. Because Dr. Plotz disagreed with Dr. Jones' opinion, the ALJ was required to provide specific, legitimate reasons for rejecting Dr. Jones' controverted opinion. Lester, 81 F.3d at 830.

First, the ALJ rejected Dr. Jones' opinion because it was based in part on plaintiff's subjective symptom testimony. Tr. 19. The ALJ may reject a physician's limitations that are based on a patient's subjective symptom testimony when the claimant is found less than credible. Bray, 554 F.3d at 1228 (when the ALJ properly determines that a claimant's description of her

limitations is not entirely credible, it is reasonable to discount a physician's opinion based on those less than credible statements). Here, the ALJ properly found plaintiff not credible. Thus, to the extent that Dr. Jones based his opinion on plaintiff's subjective self-reports, the ALJ had provided a legally sufficient reason for rejecting Dr. Jones' opinion. Bray, 554 F.3d at 1228.

Second, the ALJ noted that Dr. Jones' opinion was contradicted by several other medical opinions in the record. Tr. 19. A physician's opinion regarding a claimant's level of impairment may be rejected because it is unreasonable in light of other evidence in the record. Morgan, 169 F.3d at 601. Here, Dr. Jones' severe sitting limitation was also contradicted by the medical findings of Mary Ann Westfall, M.D. Dr. Westfall reviewed plaintiff's medical records and performed a physical residual functional capacity assessment in May, 2009. She determined that plaintiff could sit "about 6 hours in an 8-hour workday." Tr. 340. Dr. Westfall also noted internal inconsistencies within Dr. Jones' opinion. Tr. 345. For example, Dr. Westfall noted that Dr. Jones' opinion that plaintiff could perform "sedentary work with no longstanding sitting" was internally contradictory, and also controverted Dr. Jones' other statements that plaintiff could not perform any work. Similarly, Dr. Kitchel noted less severe limitations on plaintiff's ability to sit. Further, as noted above, Dr. Plotz's testimony regarding plaintiff's physical limitations also contradicted Dr. Jones' opinion. In light of the conflicting statements by Drs. Westfall, Kitchel, and Plotz, the ALJ properly found Dr. Jones' extreme limitations were unreasonable. Carmickle, 533 F.3d at 1164. On this record, the ALJ's rejection of Dr. Jones' opinion was supported by legally sufficient reasons.

B. Medical Opinion of Charles Plotz, M.D.

Medical expert and consulting physician Charles Plotz, M.D., testified regarding plaintiff's medical conditions at the hearing before the ALJ on August 9, 2011. Tr. 27. Dr. Plotz

reviewed plaintiff's medical records and stated that there was "sufficient organic basis" to establish limitations sufficient to prevent plaintiff from performing more than sedentary work. Tr. 36. He testified that plaintiff should have the option to sit or stand once per hour. Tr. 41.

The ALJ gave only partial weight Dr. Plotz's opinion. Tr. 19. He credited Dr. Plotz's opinion regarding plaintiff's possible fibromyalgia because Dr. Plotz was a board certified rheumatologist and therefore had considerable expertise in that area. Tr. 14. However, the ALJ credited the opinion of orthopedic surgeon Dr. Kitchel regarding plaintiff's limitations on sitting and standing. Dr. Kitchel examined plaintiff and opined that plaintiff had physical functional abilities greater than those assessed by Dr. Plotz. Specifically, Dr. Kitchel noted that plaintiff was capable of light-duty work. Tr. 312, 319. The ALJ was therefore required to provide specific, legitimate reasons for rejecting part of Dr. Plotz's opinion. Lester, 81 F.3d at 830.

The ALJ found that Dr. Plotz's opinion regarding the sit or stand option was contradicted by his testimony that plaintiff had no sitting limitations. Tr. 39. Internal inconsistencies within a physician's report constitute relevant evidence weighing that physician's opinion. Morgan, 169 F.3d at 603. Further, the ALJ need not accept a medical opinion that is brief and conclusory when confronted with conflicting evidence regarding a claimant's condition. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Plotz's statement regarding plaintiff's need for a "sit-stand option" was expressed on cross examination as follows:

> Q: Would [plaintiff] need a sit-stand option at all?
> A: I think so.
> Q: Do you have an opinion about the frequency with which [plaintiff] would need to exercise the sit-stand option?
> A: Probably once an hour.

Tr. 41. Dr. Plotz did not elaborate on this statement, nor did he explain how it related to his earlier testimony that plaintiff had no limitations on sitting. Id. Given the brevity of Dr. Plotz's

statement regarding the sit-stand option, the conflicting medical evidence from Dr. Kitchel regarding plaintiff's physical functional capacity, and the inconsistencies within Dr. Plotz's testimony, the ALJ's decision to reject Dr. Plotz's opinion was not error. Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 603.

Plaintiff also challenges the ALJ's rejection of Dr. Plotz's opinion that she is capable of only sedentary work. Pl.'s Br. 17-18. The ALJ considered Dr. Plotz's opinion and rejected it in favor of examining orthopedic surgeon Dr. Kitchel, who—unlike Dr. Plotz—physically examined plaintiff and opined that she retains the ability to perform more than sedentary work. See, e.g., Tr. 312, 319. The ALJ also noted that consultative physician Dr. Westfall found plaintiff was capable of performing light work. Tr. 18. Because Dr. Plotz's limitation to sedentary work was inconsistent with the medical record provided by Dr. Kitchel and Dr. Westfall the ALJ was entitled to reject it. See Tommasetti, 533 F.3d at 1040. The ALJ's evaluation of the medical evidence is affirmed.[1]

III. Past Relevant Work

Plaintiff argues, finally, that the ALJ erred in finding her capable of performing some of her past relevant work because the RFC did not include all of her functional limitations. The Court rejects this argument. Because the ALJ properly rejected the medical opinions of Dr. Plotz and Dr. Jones, and because he properly rejected plaintiff's subjective symptom testimony, the

[1] Plaintiff argues that the ALJ also improperly rejected Dr. Plotz's opinion that she would be limited from doing jobs that require fine visual acuity, because he found that plaintiff could perform jobs as a clerical worker or cashier. Pl.'s R. Br. 7-8; Tr. 42. The VE testified that a claimant with limitations on *near* visual acuity would be unable to perform work as a clerical worker or cashier. Tr. 85-86. The VE, however, distinguished jobs that require fine visual acuity from those that require near acuity, and affirmed that a claimant with plaintiff's RFC could perform jobs of clerical worker or cashier because they require no fine visual acuity. See Tr. 85. On this record, the ALJ properly accommodated Dr. Plotz's limitation on fine visual acuity and was therefore not required to provide legally sufficient reasons for rejecting it. See Tr. 15 (RFC assessment limiting plaintiff to "occupations that do not require fine visual acuity").

ALJ's determination was supported by substantial evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-66 (9th Cir. 2001) (the ALJ is not required to incorporate restrictions not supported by substantial evidence into the RFC). The ALJ's conclusion that plaintiff can perform some of her past relevant work is therefore affirmed.

CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this 23 day of July, 2014

MARCO A. HERNÁNDEZ
United States District Judge